Christopher SEGERSTROM *v.* STATE of Arkansas

CR 88-62                                      783 S.W.2d 847

Supreme Court of Arkansas
Opinion delivered February 12, 1990

*Denny Hyslip*, Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Christopher Segerstrom, a fifteen-year-old boy, raped and killed four-year-old Barbara Thompson. Both the rape and the murder were outrageously violent: a stick was rammed into the little girl's vagina with such force that it protruded into her abdominal cavity, and she was beaten with a forty-pound rock to such an extent that her skull was partially flattened with brain matter protruding. In addition, she had abrasions to her back and chest, including one through her right nipple which appeared to have been intentionally inflicted. The appellant was charged with capital murder, but the State waived the death penalty because of his age. He was convicted and sentenced to life in prison without parole. We affirm the judgment of conviction.

We need not devote a great deal of time to appellant's first point of appeal as it is wholly without merit. In it, appellant argues he was deprived of due process of law because the trial court refused to appoint a private psychiatrist or to provide funds for one because: (1) the psychiatric evaluation by the state

hospital was inadequate, and (2) the two psychiatrists who examined appellant had directly conflicting opinions.

More specifically, appellant contends the evaluation by the state hospital was inadequate because: (a) the psychiatrist's report was not based upon the psychiatrist's own evaluation, but instead, upon what she thought the court wanted to hear, and (b) the psychiatrist had been treated by another psychiatrist. The assertion that the psychiatric report was not based upon evaluations is wholly without factual support. Further, there is nothing in the record which indicates that the trial judge attempted to direct any particular response from the psychiatrist.

The examining psychiatrist from the state hospital, Dr. Lynch, had been treated by another psychiatrist for anxiety brought on by having to testify at criminal proceedings. We fail to see any causal connection between seeking counseling for anxiety and the adequacy of the evaluation. In fact, the evaluation, as supplemented, is thorough.

Appellant additionally argues that a private psychiatrist should have been appointed to resolve the "direct conflict" between the testimony of the psychiatrist from the state hospital, Dr. Lynch, and the testimony of another appointed psychiatrist who worked at Ozark Guidance Center, Dr. Jenkins. The short answer to the argument is there was no direct conflict in their testimony. Dr. Lynch's testimony was about appellant's ability to appreciate the criminality of his conduct at the time of the murder and his ability to understand the nature of the charge against him and to cooperate in his defense. Dr. Jenkins very candidly testified he had not been asked to form an opinion about those matters. Instead, he was asked whether appellant had the ability to knowingly and intelligently waive his *Miranda* rights.

Appellant's next point of appeal is that the trial court erred in refusing to suppress his confession because it was neither voluntary nor was there a knowing and intelligent waiver of his rights. There is no merit to either contention.

The "voluntary" requirement is concerned with coercive police activity. Appellant contends that he was physically abused on four (4) occasions before he confessed and, accordingly, his confession was not voluntary. The first incident oc-

curred before the police arrested appellant. An antagonistic crowd of the victim's neighbors gathered around appellant. A dangerous situation existed. The police had to work their way through the crowd in order to safely remove appellant from the scene. Very simply, that did not constitute coercive police activity. The second incident was in the police car on the way to the police station. Appellant was handcuffed while in the back seat of the car. Still, he managed to get hold of a bottle and an umbrella and said to the policeman that he was going to "poke your . . . eyes out." He fought as the police tried to get him out of the car. Under the circumstances the police grabbed his legs to keep him from kicking them. The use of reasonable force to subdue a prisoner and transport him to the police station is not a police activity designed to coerce a confession. Third, the police saw that he had a red substance on his clothes. They correctly assumed the substance might be the victim's blood and the clothes might constitute valuable evidence. They asked for the clothes. The appellant, possibly realizing how damaging the evidence might be, refused to give the police the clothing with blood on it. They had to physically remove his clothes. No excessive force was used. Fourth, appellant refused to stand for a mug shot. In fact, he strenuously fought having his picture taken, and it took two and sometimes three officers to hold him for the picture. Again, no excessive force was used.

As can be seen from those incidents, appellant was very hostile. The police were only trying to restrain appellant for the legitimate purposes of transporting him to the station, taking his picture and collecting evidence. By these activities, there was no attempt to force a confession out of him. There was no lengthy period of interrogation. The murder occurred around 2:30 p.m., and appellant was arrested shortly after 3:00 p.m. He was given his *Miranda* warning at 4:50 p.m. and was questioned for about 30 minutes in front of a number of officers. He denied committing the murder. He then was taken to another room by an officer who knew him, and he soon confessed to that officer. The confession had been handwritten and signed by 7:22 p.m. There was no police overreaching, and appellant was not intimidated.

Appellant additionally argues that he did not knowingly and intelligently waive his *Miranda* rights. Again, in examining this issue we make an independent review of the

totality of the circumstances and reverse the trial court only if its ruling is clearly erroneous. *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989). The credibility of the witnesses who testify to the circumstances surrounding the accused's custodial statement is for the trial court to determine. *Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989). In this case a psychiatrist, Dr. Jenkins, testified that appellant had an intelligence quotient of 77 on the WISC-R test, was fifteen years old, but only had a mental age of six years and four months, and had an attention deficit disorder as well as a learning disability. Under these circumstances, Dr. Jenkins stated that it would be likely that appellant did not understand his *Miranda* warning. However, the witness also stated that if appellant were slowly told of his rights, and if the officers paused after advising him of each right, and if he were warned only a short time before being questioned, it would increase the likelihood that appellant understood his rights. Finally, the doctor stated, "It's totally possible that when he was advised of those rights on July 26th, that he understood those rights."

■ Testimony by the officers showed that appellant had been arrested previously on burglary and drug charges and had been given *Miranda* warnings on four or five earlier occasions. On the afternoon the confession was given, the officer slowly read the standard *Miranda* form to appellant and then explained each individual right to him and then asked questions about each right. For example, two of the questions the officer asked on his own were, "You understand you do not have to say anything?" and "Do you want an attorney right here?" The appellant signed the form that he understood he was waiving his rights, and he told the officers that he understood his rights and waived them. The officers testified that they were satisfied that the appellant understood his *Miranda* rights and knowingly waived them. Under these facts we cannot say the ruling of the trial judge was clearly erroneous.

■ Appellant further questions the voluntariness of the waiver on the basis that it was falsely induced. We reject the argument as there was no false promise. Just before he confessed, appellant asked what was going to happen to him. The officer replied that he did not know, but he was definitely going to jail and would probably be evaluated. He did go to jail and was evaluated

by the state hospital. Consequently, there was no false promise which rendered appellant's statement inadmissible. *See Tippitt v. State*, 285 Ark. 294, 686 S.W.2d 420 (1985).

■ Appellant makes the related argument that his confession should not have been admitted because he invoked his right to remain silent. We do not interpret the testimony cited by appellant as demonstrating an attempt to invoke his right to remain silent. In the cited testimony, which occurred during the first few minutes of questioning, the appellant said he knew the victim, but did not murder her, and he wanted to go fishing.

■ Appellant's next point of appeal is that the police placed physical restraints upon him and these restraints had a chilling effect on his right to present a defense. The argument is wholly without merit. Appellant was most unruly during the 154 days he was in jail awaiting trial. He would run and butt his head on the cell door. He beat on the cell wall. He urinated on the cell door. He screamed. He intimidated other prisoners. He plugged the air vent in the cell. He tore up a blanket, and put it in the toilet and flooded his cell. He flooded the cell on other occasions by plugging a shower. He was combative. He attempted suicide. As a result of this, the police, on seven (7) occasions, placed physical restraints on him. These included handcuffs, shackles, and a waist chain. Appellant offered no proof at the trial to show how the use of restraint on seven (7) occasions had a chilling effect on his right to present a defense, and he offers no explanation of the argument on appeal. Accordingly, we dismiss the argument.

Finally, appellant argues that the trial court erred in allowing a policeman to testify that appellant threatened him on the way to the police station. The appellant objected on the basis of relevancy. The trial court's ruling was correct.

■ By the time of trial, appellant had confessed to the murder, but he had also told the victim's mother that he accidentally dropped the stone on the little girl. Thus, one issue was whether the killing was intentional or accidental. Appellant's emotional state of hostility and anger shortly after the child was killed was clearly relevant to show that it was more likely that the killing was intentional.

■ Appellant alternatively argues that, even if the above

evidence was properly admissible, the trial court did not weigh probative value against prejudice as required by A.R.E. Rule 403. We summarily dismiss the argument as no such objection was made to the trial court.

In compliance with Rule 11(f) of the Rules of the Supreme Court and Court of Appeals, an examination of all other motions and objections decided adversely to appellant has been made, and we find no prejudicial error.

Affirmed.