William Edward WHITSON *v*. STATE of Arkansas

CR 93-404                                        863 S.W.2d 794

Supreme Court of Arkansas
Opinion delivered October 18, 1993

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. William Whitson, the appellant, was found guilty of Driving While Intoxicated and violation of the Implied Consent law in the Municipal Court of Springdale. He appealed to the Washington County Circuit Court. Following a jury trial, he was again found guilty of both charges. Based on the jury verdict, his license was suspended for six months, a $150 fine was levied against him, and he was sentenced to three days in the Washington County Jail. On appeal, he raises the following issues: (1) whether the trial court erred by admitting testimony about the Horizontal Gaze Nystagmus (HGN) Test; (2) whether the trial court erred by permitting testimony of Whitson's post-*Miranda* silence; (3) whether the trial court erred by not ruling on the constitutionality of the Arkansas Implied Consent Law; and (4) whether the trial court erred by allowing the State to inquire about a prior bad act committed by the appellant.

None of the errors asserted requires reversal of this case, and we affirm.

During the early morning hours of June 1, 1991, the Springdale Police Department responded to a call regarding a problem at a residence jointly owned by Whitson and a friend of longstanding, Penny Curtis. Officer Robert Scott Lewis of that department arrived at the appellant's residence at 2:05 a.m. At trial, Officer Lewis testified that he found the appellant to be "highly intoxicated." He was drinking a beer when the officer arrived, and his eyes were bloodshot and glassy. His speech was also slurred, and his movements were slow and sluggish. The police officer advised the appellant that "he should not drive at all." Fearing that Whitson might try to leave, the officer notified the Springdale dispatcher of the license number on Whitson's black Ford Ranger truck.

Approximately two hours later at 4:20 a.m., Officer Lewis observed Whitson's truck going east on Highway 412 towards Huntsville. The officer followed the truck and saw the appellant cross the center line two times. He stopped the appellant, and when Whitson exited his vehicle, Officer Lewis approached him and told him that he "knew he had been drinking" and requested him to take field sobriety tests to determine his level of intoxication. Again, the officer noted that the appellant's eyes were very bloodshot, his speech was slurred, he smelled of intoxicants, and he was swaying and leaning against the truck.

Officer Lewis gave the appellant three sobriety tests. He first administered the one-leg-stand test. Prior to giving the appellant final instructions about the test, the officer asked him if he had any knee, back, or feet problems. The appellant said that he had back problems. The appellant failed this test. The second test conducted was the finger-to-nose test. While giving Whitson instructions for this test, the officer was told that Whitson's left arm did not function properly, and he would only be able to perform the test with his right hand. Officer Lewis then had the appellant perform the test with his right hand only. The appellant also failed this test.

The third test administered by the police officer was the horizontal gaze nystagmus test (HGN test). Officer Lewis later testified that he had taken an eight-hour night course on HGN testing at the State Police Academy. In Whitson's case, he tested each eye separately and administered three drills for each eye. The officer first requested that Whitson follow the tip of his pen with one eye without moving the head; secondly, that he move his eye fully to the corner; and thirdly, that he follow the pen with his eye to a forty-five degree angle. Officer Lewis stated at trial that he looks for several things during the tests, including a lack of smooth pursuit by the eye and the presence of nystagmus or involuntary twitching and jerking in the eye. He stated that nystagmus indicates the presence of alcohol in the system and alcohol actually increases nystagmus to a measurable degree. He concluded that the tests showed nystagmus for both eyes under all three tests which indicated the presence of alcohol in the system. Whitson was then placed under arrest for driving while intoxicated.

The police officer later testified that had Whitson passed two of the three field sobriety tests, he would not have arrested him, but he failed all three. After his arrest, Whitson was taken to the police station for a breathanalysis where he was read the Implied Consent Warning and Right to Another Test form by Officer Lewis. Whitson indicated to the police officer that he understood the form and that he would take the test, and he checked the answers to questions on the form and initialed them. Whitson either refused or was unable to blow into the machine on two occasions. He attributed this inability at trial to a scarred lung condition. He was charged with DWI and violation of the Implied Consent Law.

Whitson was tried and convicted of both charges in Springdale Municipal Court. He then appealed to Washington County Circuit Court. Prior to trial, Whitson moved to dismiss the Implied Consent charge on grounds that the law is unconstitutional, both facially and as applied. Specifically, he argued that Ark. Code Ann. § 5-65-205(c) denies the accused the right to a jury trial because it speaks in terms of a *judge* deciding the issue. As a concomitant, he contended that only a judge could determine violation of implied consent under the statute — not a jury. The trial court denied the motion to dismiss.

A jury was impaneled to hear the DWI and implied consent charges in circuit court. Whitson was convicted on both charges and assessed three days in jail and $150 fine for DWI and a six-month suspension of his drivers license for violating the Implied Consent Law. Judgment was then entered.

## I. HGN TEST

On appeal, the appellant first argues that the trial court erred in admitting Officer Lewis's testimony about the HGN test because (1) the test was not relevant, and (2) a preliminary *Prater* hearing to determine relevancy was not conducted. He cites this court to *Prater* v. *State*, 307 Ark. 180, 820 S.W.2d 429 (1991), and *Middleton* v. *State*, 29 Ark.App. 83, 780 S.W.2d 581 (1989), and argues that a mistrial should have been declared.

In 1986, the Arizona Supreme Court defined nystagmus as follows:

Nystagmus is an involuntary jerking of the eyeball.

The jerking may be aggravated by central nervous system depressants such as alcohol or barbiturates. (Citation omitted.) Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they are turned to the side.

*State* v. *Superior Court of County of Cochise*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986). In 1988, an American Law Reports Annotation further stated that HGN testing had been in use for 30 years but had not been widely used until recently. *Horizontal Gaze Nystagmus Test: Use In Impaired Driving Prosecution*, 60 ALR4th 1129, § 1, p. 1131 (1988).

We note initially that Officer Lewis did not testify to a specific blood alcohol percentage after administering the HGN test but only concluded that the test indicated the presence of alcohol. The pertinent DWI statute describes two unlawful acts — one for driving while intoxicated and one for driving with .1 percent blood alcohol content as proven by chemical testing:

> (a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

> (b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood as determined by a chemical test of the person's blood, urine, breath, or other bodily substance.

Ark. Code Ann. § 5-65-103 (1987). "Intoxicated" is further defined as ingesting alcohol to such a degree that the driver's motor skills are substantially altered and a clear and substantial danger to the driver or to others exists. Ark. Code Ann. § 5-65-102(1) (Supp. 1991).

In 1989, the Court of Appeals concluded that the testimony of an arresting officer was insufficient to provide an evidentiary foundation to determine the percentage of alcohol content in the driver's blood. *Middleton* v. *State, supra.* In that case, the officer testified that the driver's blood alcohol level was .15 or .16 percent based solely on the HGN test.

The fact that the police officer in *Middleton* v. *State* testified to fixed percentages of blood alcohol content under § 5-65-103(b) distinguishes that case from the case at bar. Here, the HGN test administered by Officer Lewis was not used to quantify a precise percentage of blood alcohol content but rather to show some indication of alcohol consumption in conjunction with other field sobriety tests. Using the test to identify a precise blood alcohol content under § 5-65-103(b) is vastly different from testing to indicate some alcohol in the system for purposes of intoxication under § 5-65-103(a). In a later case, the Court of Appeals had occasion to consider the HGN test when the testing officer did not attempt to identify precise blood alcohol content. *Brown* v. *State*, 38 Ark. App. 18, 827 S.W.2d 124 (1992). In *Brown*, the Court of Appeals held that where there was no testimony of specific blood alcohol percentages by the police officer but only that the HGN test showed the driver had ingested substances that would make him an unsatisfactory driver, no error occurred. The facts of the *Brown* case more closely approximate those in the present case.

We note that other jurisdictions have also been circumspect about permitting police officers to testify to percentages of blood alcohol content predicated solely on the HGN test. *See, e.g., State* v. *Superior Court of County of Cochise, supra; People* v. *Loomis*, 156 Cal. App. 3d Supp. 1, 203 Cal. Rptr. 767 (1984). Yet, when blood alcohol content is not quantified by the testifying officer, introduction of nystagmus as some evidence of impairment due to alcohol has been allowed. *See, e.g., State* v. *Superior Court of County of Cochise, supra (dictum); State* v. *Clark*, 762 P.2d 853 (Mont. 1988). In *County of Cochise*, the Arizona Supreme Court assessed the use of HGN testing to prove blood alcohol content or, alternatively, to prove that one was "driving under its influence." The Arizona Court drew a clear distinction between 1) using nystagmus to prove a percentage of blood alcohol content under one Arizona statute comparable to Ark. Code Ann. § 5-65-103(b), and 2) using it to prove driving under the influence of alcohol under a second statute much like Ark. Code Ann. § 5-65-103 (a). The court denied the use of HGN testing to establish blood alcohol content but did not prohibit introduction of the results of the test to prove driving under the influence.

■ We agree that testimony of the driver's nystagmus is relevant for the limited purpose of generally indicating the presence of alcohol. In the case at bar, Whitson was charged with driving while intoxicated, not with operating a vehicle with a blood alcohol content of .1 percent or more, and the jury was only instructed on the § 5-65-103(a) offense. Also, Officer Lewis's training and qualifications are not contested on appeal. Moreover, the HGN test was not used to fix a percentage of blood alcohol content under § 5-65-103(b) but rather to indicate impairment. Indeed, no percentages of blood alcohol were testified to by Officer Lewis. We hold, therefore, that testimony of Whitson's nystagmus was relevant as some proof of intoxication under § 5-65-103(a).

■ We turn next to the issue of whether the trial court erred in not conducting a preliminary *Prater* inquiry on the relevancy of the test. In 1991, this court announced the relevancy approach as our standard for determining the admissibility of novel scientific evidence which we described as a more liberal test than the *Frye* standard which looked to general acceptance of the procedure in question in the scientific community. *Prater v. State, supra.* The relevancy approach requires that the trial court conduct a preliminary inquiry of any novel scientific evidence and focus on: (1) the reliability of the process used to generate the evidence; (2) the possibility that the jury would be overwhelmed, confused or misled by the evidence; and (3) the connection between the evidence to be offered and the disputed factual issue in the particular case.

■ The State clearly did not consider HGN testing to be "novel scientific evidence" warranting a preliminary *Prater* inquiry under these facts. As already indicated, HGN testing has been in existence for 35 years, and officers are trained in this technique at the State Police Academy. Moreover, Whitson, who asked for the discrete hearing, made no showing of novelty but merely argued the absence of reliability and relevancy. We agree, based on the record before us, that the results of nystagmus testing for purposes of showing some indication of alcohol was not novel scientific evidence requiring a preliminary inquiry. Our opinion, however, might well be different had the officer attempted to quantify blood alcohol content based solely on the HGN test.

In sum, we hold that the results of the HGN test were relevant to show alcohol consumption in conjunction with the results of other field sobriety tests performed. We note in this holding that the training and qualifications of Officer Lewis to administer the test are not in dispute. We further underscore the point that the test was not used to quantify blood alcohol content and, thus, the novelty of the test was not such as to require a discrete *Prater* inquiry. The motion to declare a mistrial was properly denied.

## II. LACK OF COOPERATION

The appellant next argues that his right to remain silent under the Fifth Amendment was violated after he was given *Miranda* warnings in contravention of *Doyle* v. *Ohio,* 426 U.S. 610 (1975). He specifically objects to testimony given by Officer Lewis that during the booking process he was cooperative "[t]o a certain degree" and "refused to answer certain questions." The State counters that this issue was not preserved for appeal because at trial Whitson argued that his refusal to answer questions was irrelevant whereas on appeal he has changed his argument to violation of Due Process on the basis that the officer's remarks constituted a reference to his post-*Miranda* silence.

It is well settled that only an issue stated clearly and specifically below will be reviewed on appeal. *See, e.g., Parette v. State*, 301 Ark. 607, 786 S.W.2d 817 (1990); *Horn* v. *State*, 282 Ark. 75, 665 S.W.2d 880 (1984). Where an appellant objects to testimony on one theory at trial, we will not consider a distinct argument raised for the first time on appeal. *Segerstrom* v. *State*, 301 Ark. 314, 783 S.W.2d 847 (1990), *Fitzpatrick* v. *State*, 7 Ark. App. 246, 647 S.W.2d 480 (1983). The reason is simple. The trial court was not given an opportunity to consider the point now raised. *Withers* v. *State*, 308 Ark. 507, 825 S.W.2d 819 (1992); *Gustafson* v. *State*, 267 Ark. 83, 593 S.W.2d 187 (1980).

In the instant case, Whitson objected to the introduction of a *Miranda* warning form which he apparently refused to sign. The State sought to introduce the form as evidence of the appellant's lack of cooperation. The court sustained a defense objection to its introduction but permitted inquiry into Whitson's "overall degree of cooperation" on the basis that this was probative of intoxication. Following that ruling, Officer Lewis

testified, "Mr. Whitson was cooperative to a certain degree. He refused to answer certain questions." Defense counsel objected again, and the court ruled a second time that lack of cooperation was relevant to the issue of intoxication.

Though Whitson protests vehemently that this is not the case, it is obvious to us that his argument has changed on appeal. Whitson now argues that his *Due Process rights* were violated under *Doyle* v. *Ohio, supra,* by allowing interrogation which alluded in any respect to his post-*Miranda* silence. This is a wholly distinct and dissimilar argument from his objection concerning the *relevancy* of a refusal to sign the *Miranda* form which he made at trial. There, the argument made was that a refusal to sign a *Miranda* form was not pertinent to the issue of lack of cooperation. We will not consider constitutional issues raised for the first time on appeal, *Campbell* v. *State,* 311 Ark. 641, 846 S.W.2d 639 (1993), and we conclude that this issue is not properly preserved for appeal.

■ As a footnote to this issue, we observe a potential inconsistency between advising a defendant of the right to remain silent as part of the *Miranda* warnings and using any subsequent refusal to answer questions as evidence of uncooperativeness and, ultimately, of intoxication. The privilege against self-incrimination embraced within the right to remain silent is fundamental. Using that silence to prove lack of cooperation, if appropriately raised, is clearly prohibited. However, a defendant could well refuse to answer certain questions in a spirit of rebellion that have nothing to do with guilt or innocence. In the case before us, we can only surmise what brand of "questions" Officer Lewis was alluding to in his testimony.

## III. IMPLIED CONSENT LAW

Next, Whitson charges that the Arkansas Implied Consent Law is unconstitutional on its face and as applied in that it provides for a judicial determination and not trial by jury. Because the judge is the factfinder under Ark. Code Ann. 5-65-205 (c) (1987), according to the appellant, the law deprives defendants of their right to a jury trial. This point was argued by appellant as a pre-trial motion, but the trial court refused to rule on the constitutionality of the statute, stating that the motion was not timely filed and the Attorney General had not been given

notice.

We hold that this point is now academic because the appellant did receive a jury trial on the implied consent charge. He is not a member of the class adversely affected and, therefore, lacks standing to raise the issue that § 5-65-205(c) does not provide for a jury trial. *Leshe* v. *State*, 304 Ark. 442, 803 S.W.2d 522 (1991). Furthermore, because the appellant has received a jury trial the matter is moot, and there is no relief left to be afforded. *See Campbell* v. *State,* 311 Ark. 641, 846 S.W.2d 639 (1993).

## IV. PRIOR BAD ACT

For his final point, the appellant argues that the trial court erred by allowing the State to elicit testimony from Peggy Curtis, that he had previously fought with her and shoved her. We note that the appellant's defense was based in large part on the fact that he was physically unable to pass the field sobriety tests due to back and arm injuries. The colloquy on this issue was as follows:

> PROSECUTOR: Is he able to engage in fighting?
>
> CURTIS: I have never seen him fight.
>
> PROSECUTOR: You haven't?
>
> CURTIS: No.
>
> PROSECUTOR: He has fought with you, hasn't he?
>
> CURTIS: He has never hit me.
>
> PROSECUTOR: Okay, I want to show you a document here that I want to call State's Exhibit Number 3. Is this in your writing? An affidavit you filled out at my office.
>
> CURTIS: Yes, he didn't hit me, he shoved me.

The defense first objected on grounds that this was impeachment on a collateral matter by using extrinsic evidence and later added objections to the State's introduction of the affidavit on the basis of relevancy and the resulting prejudice which would outweigh the probative value of the document. The trial court denied introduction of the affidavit but permitted the prosecutor to inquire further into the "rough-housing" between Whitson and Peggy Curtis as relevant to Curtis's truthfulness.

First, we note that Whitson is entirely correct that a witness cannot be impeached by extrinsic evidence on a collateral matter. Ark. R. Evid. 608(b); *see also Sutton* v. *State*, 311 Ark 435, 844 S.W.2d 350 (1993). The trial court did properly deny admission of the affidavit into evidence. We turn, therefore, to the issue of the cross examination itself. Even though the extent of Whitson's physical abilities was a crucial issue in this case, we consider questioning about whether the appellant could hit, shove, or push Curtis to be a collateral matter and, in addition, an improper area of examination for the very reason argued by the appellant — its probative value was outweighed by the potential prejudicial impact. Ark. R. Evid. 403. Nonetheless, we note where later in her testimony, Curtis answered affirmatively that the appellant was rough-housing her and had pushed her on the day he was arrested. Whitson made no objection to this subsequent testimony. Hence, we conclude that any error committed by the prosecutor's first questioning which was objected to by defense counsel was rendered harmless by Curtis's subsequent testimony to the same effect, though it related to a separate incident. *See Orr* v. *State*, 288 Ark. 118, 703 S.W.2d 438 (1986).

Affirmed.