STATE of Missouri, Respondent,

v.

Douglas D. ROSE, Appellant.

No. WD 59925.

Missouri Court of Appeals,
Western District.

July 30, 2002.

Joseph A. Morrey, St. Joseph, for Appellant.

Dwight K. Scroggins, Jr., St. Joseph, for Respondent.

Before PAUL M. SPINDEN, Presiding Judge, HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE, JAMES M. SMART, JR., JOSEPH M. ELLIS, VICTOR C. HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER, and LISA WHITE HARDWICK, Judges, and WILLIAM E. TURNAGE, Senior Judge.

THOMAS H. NEWTON, Judge.

Douglas D. Rose raises five points on appeal from his conviction for driving while intoxicated (DWI). Mr. Rose was also convicted of another traffic offense, but none of the points relate to that conviction. The first point alleges that there was insufficient evidence to sustain his DWI conviction. Next, he claims that the trial court should have granted his motion *in limine* to exclude evidence of his refusal to take a breath test. In his third point he claims that the trial court erred in allowing the police officer to testify concerning the horizontal gaze nystagmus test that was administered. Fourth, Mr. Rose argues that the trial court improperly interrupted his cross-examination of the arresting officer and dismissed the jury. Finally, he complains that the trial judge improperly interrupted his closing argument and dismissed the jury upon an objection by the State.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Rose was stopped by St. Joseph Police Officer Gerard McConaha at approximately 1:30 a.m. on October 4, 2000, after the officer observed Mr. Rose's pickup truck slow at a red light, proceed through the intersection, and make a left turn while the signal was still red. After pulling Mr. Rose over, Officer McConaha detected a strong odor of intoxicants, and the officer also noticed that Mr. Rose's eyes were glassy. When asked, Mr. Rose denied that he had been drinking. Officer McConaha had Mr. Rose exit the vehicle because of his driving actions, the smell of intoxicants, and his general look of intoxication. At that point, the officer administered three field sobriety tests, the hori-

zontal gaze nystagmus ("HGN") test, the one-leg stand test, and the walk-and-turn test.

Based upon Mr. Rose's poor performance on these sobriety tests, the officer concluded that Mr. Rose was intoxicated. He was asked again if he had been drinking, and Mr. Rose responded, "Well, I had two beers." Mr. Rose was arrested for DWI and transported to the police station. At the station, Mr. Rose agreed to submit to a breath sample. However, after being given three opportunities, the officer concluded that Mr. Rose was not attempting to give a valid sample because the breathalyzer emitted an audible beeping tone "like if you just let it set there by itself" and because the device into which Mr. Rose was blowing did not "cloud up from condensation." Thus, Mr. Rose was marked down as a refusal. It was the officer's opinion, even without the benefit of a breathalyzer result, that Mr. Rose was under the influence of alcohol that night. Accordingly, Mr. Rose was charged with the class B misdemeanor of DWI, § 577.010,[1] and a jury found him guilty.[2]

This appeal follows.

## LEGAL ANALYSIS

Because the claims of error raised in Points II and III, if found in Mr. Rose's favor, would bear on the sufficiency of evidence claim he raises in Point I, we address these points prior to addressing Point I.

### I. Evidence of Mr. Rose's Failure to Submit to a Breathalyzer Test

■ In Mr. Rose's second point on appeal, he claims that the trial court erred

in denying his motion *in limine* to exclude evidence of his failure to submit to the breathalyzer test because refusal was not found in his administrative suspension hearing. Rulings on motions *in limine* are interlocutory in nature and preserve nothing for appellate review. *See State v. Carr*, 50 S.W.3d 848, 855 (Mo.App. W.D. 2001). To preserve a claim of error for appellate review as to the admission of evidence, the party seeking to exclude the evidence must object at trial to its admission. *See id.* at 855–56. Here, however, when the prosecution adduced testimony from Officer McConaha concerning Mr. Rose's refusal, defense counsel did not object. Therefore, the issue has not been preserved for appellate review. Although Mr. Rose does not apprise this court of the applicable standard of review pursuant to Rule 84.04(e),[3] we presume that he requests plain error review pursuant to Rule 30.20.

■ Under plain error review, Mr. Rose must show that a manifest injustice or a miscarriage of justice occurred. Even though the State concedes in its brief that the Associate Circuit Court of Buchanan County reinstated Mr. Rose's license after a trial *de novo* on the basis that the evidence presented at the hearing was insufficient, Mr. Rose has not filed a record of the administrative hearing with this court. It is the appellant's responsibility to prepare the record on appeal. Rule 81.12(d). Furthermore, whatever the reason for trial counsel's failure to object at trial, the claim he seems to raise is essentially a collateral estoppel argument, maintaining that the prosecution should be precluded from introducing evidence of a driver's refusal

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. He was also charged with and found guilty of the class C misdemeanor of turning left on

a red traffic signal, § 304.281, but none of his points on appeal concern that conviction.

3. All rule references are to Missouri Supreme Court Rules (2002).

where no refusal is found in the administrative context, and the courts of this state have typically held that such an assertion is without merit. *See State v. Clarkston,* 963 S.W.2d 705, 710 (Mo.App. W.D.1998) ("The fact that the refusal to consent to a breath test could not be used as a basis to revoke [the driver's] license did not make his refusal to take [the breath test] inadmissible for other purposes, such as to explain ... why the State did not have direct evidence of the level of alcohol ... in [his] blood, and instead relied on other evidence of intoxication."); *see also State v. Mayfield,* 970 S.W.2d 917, 918–919 (Mo. App. S.D.1998) (stipulation in license revocation proceeding that officer did not have probable cause to stop motorist did not collaterally estop the State in later DWI case); *State v. Rotter,* 958 S.W.2d 59, 64 (Mo.App. W.D.1997) (stipulation during license revocation hearing that driver had not refused to submit to a breath test did not have collateral estoppel effect in driver's criminal trial for DWI); *State v. Warfield,* 854 S.W.2d 9, 11–12 (Mo.App. S.D. 1993) (finding in prior license suspension administrative hearing that defendant was not driver of automobile did not bar the prosecution for DWI); *Pagano v. Dir. of Revenue,* 927 S.W.2d 948, 951 (Mo.App. E.D.1996) (stating "driver's guilty plea in the criminal proceeding was not conclusive as to any of the elements of the administrative suspension of driver's license, and did not waive Director's duty to present evidence that driver was, in fact, the person operating the vehicle. The trial court's determination of whether driver was the person behind the wheel was inde-

pendent of, and not affected by, driver's plea of guilty to the criminal charges arising out of the same occurrence.").

Because of the aforementioned case law and the overall circumstances in this case, we are confident that Mr. Rose did not suffer a manifest injustice or a miscarriage of justice. This point is denied.

## II. The HGN Test and Related Testimony [4]

In discussing the field sobriety tests administered to Mr. Rose, Officer McConaha testified that Mr. Rose scored six points on the horizontal gaze nystagmus test. The HGN test scores one point for eye movement indicative of alcohol influence for each of three tests for each eye, with the highest possible score of six points, and a score of four or more points is an indication that a suspect is intoxicated. *See Parrish v. Dir. of Revenue,* 11 S.W.3d 652, 655 (Mo.App. E.D.1999). Although somewhat awkward, the name of this test is quite descriptive:

Nystagmus is an involuntary jerking of the eyes. Under the HGN test, an individual's eye movements are tested as a means of determining whether they are under the influence of alcohol. A suspect is required to follow an object such as a finger or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision. [T]here are three separate indicators that an officer looks for under the HGN test. First, an officer observes how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of

**4.** Footnotes throughout this Section of the opinion will provide citations to other jurisdictions to show how those jurisdictions have dealt with similar issues relating to the use of HGN evidence. Although noteworthy, these authorities are not determinative of our resolution of Mr. Rose's Point III. Missouri law is

sufficient for us to address Mr. Rose's point on appeal, and, borrowing from Justice Blair's proclamation in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 450, 1 L.Ed. 440 (1793), Missouri law is the only fountain from which we shall draw; the only authority to which we shall appeal.

the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol. Second, an officer observes whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol. Third, an officer observes the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45–degree angle is indicative of the influence of alcohol.

*State v. Hill*, 865 S.W.2d 702, 704 (Mo.App. W.D.1993), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997).

## A. The Admissibility of HGN Test Results

The courts of this state typically find that HGN evidence is admissible as a reliable measure of an illegal level of intoxication in prosecutions for DWI. *See, e.g., Clarkston*, 963 S.W.2d at 717. In this case, Mr. Rose challenges the trial court's decision to allow Officer McConaha to testify: "Six scores, in my experience, they've always been above the legal limit [of] .10. I've never had one that scored six below." More specifically, Mr. Rose's third point claims that Officer McConaha was incompetent to testify because an insufficient foundation was laid as to both his competency as an expert and the test's scientific efficacy.

As it relates to Mr. Rose's quarrel with the test's efficacy, we first recognized the scientific acceptance of the HGN test in *State v. Hill*. In *Hill*, we found that "the HGN test has achieved general acceptance within the behavioral science community. We find that when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication." *Hill*, 865 S.W.2d at 704. Thus, in accordance with *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir. 1923), HGN evidence may be admitted into evidence without first obtaining expert testimony regarding the HGN test's scientific validity, provided that an appropriate foundation is laid. *See Hill*, 865 S.W.2d at 704; *State v. Link*, 25 S.W.3d 136, 144–45 (Mo. banc 2000).[5] Subsequently, this court's Southern District adopted *Hill* in *State v. Myers*, 940 S.W.2d 64, 64–5 (Mo.App. S.D.1997). Also, this court's Eastern District has relied on *Hill*. *See Parrish*, 11 S.W.3d at 654–55 (holding that, in a license revocation proceeding, upon the driver's refusal to submit to a chemical test of her breath, the arresting officer had reasonable grounds to arrest the driver for driving while intoxicated, noting in particular that the driver's score of six points on an HGN test was "clearly

---

5. The eloquent explanation provided by the Supreme Court of Illinois is offered here for the benefit of members of the Missouri bench and bar:

> Although the State is no longer required to show that the HGN test satisfies the *Frye* standard before it may introduce the results of an HGN test into evidence, the validity of HGN tests and test results is not beyond challenge. If a defendant has evidence showing that HGN tests are scientifically unsound, then he may interpose the appropriate objection to the HGN test results and present his supporting evidence to the trial

court. If the trial court is persuaded by the defendant's evidence, then the court has the right to bar its admission. Note, however, that it is the defendant's obligation to show that the test results are infirm. It is not the responsibility of the State to show that the tests and results are scientifically valid. Absent proof by the defense that the HGN test is unsound, the State need only show that the officer who gave the test was trained in the procedure and that the test was properly administered.

*People v. Basler*, 193 Ill.2d 545, 251 Ill.Dec. 171, 740 N.E.2d 1, 4–5 (2000).

indicative of intoxication") (citing *Hill*, 865 S.W.2d at 704).

Mr. Rose asks us to revisit and reverse *Hill*, claiming that the use of HGN testing should be limited to assisting an officer in the field in determining whether to arrest a driver for a drinking and driving violation. Mr. Rose refers us to *Alsbach v. Bader*, 700 S.W.2d 823 (Mo. banc 1985), which, we note, was decided prior to our decision in *Hill*. *Alsbach* concerned the admissibility of testimony of a witness that was involved in a motor vehicle collision, where the matters pertained to memories refreshed through hypnosis. *See id.* at 824. The Supreme Court of Missouri held that such testimony was inadmissible in the courts of Missouri. *See id.* at 830. We see no parallel between testimony concerning post-hypnotic memories and the testimony of an adequately trained law enforcement officer regarding his or her observations during a properly administered field sobriety test. We have previously been afforded an opportunity to reexamine our holding in *Hill*, and we declined to do so. *See Clarkston*, 963 S.W.2d at 717. Because he neither provides a scientific basis nor offered any evidence before the trial court that causes us to question the holding in *Hill*, Mr. Rose's argument is insufficient to compel us to depart from precedent at this time either. As a consequence of Mr. Rose's refusal, the prosecution in this case had to rely on indirect evidence of intoxication. We see no reason why a driver's refusal to submit to a chemical test, which would arguably provide a more precise measure of blood alcohol content ("BAC"), should give rise to an inability for the State to prove intoxication by alternative means through the use of circumstantial evidence of intoxication, such as the arresting officer's testimony as it relates to the driver's performance on field sobriety tests, the HGN in particular.

■ As circumstantial evidence of intoxication, HGN test results are clearly admissible. Where, as here, a driver scores four or more points on the HGN, there is substantial evidence that the driver is intoxicated. *See Duffy v. Dir. of Revenue*, 966 S.W.2d 372, 378 (Mo.App. W.D.1998). Indeed, a "score of six points is *clearly indicative* of intoxication." *Parrish*, 11 S.W.3d at 655 (emphasis added). Although indicative of intoxication, a driver's particular score on the HGN test *does not* create a presumption of intoxication. That ultimate conclusion rests with the trier of fact, who is free to believe or disbelieve the officer's testimony and to ascribe the weight given to it.

■ Before an officer is free to state his or her opinion as to the driver's performance on the HGN test, however, an adequate foundation must be established. This consists of showing 1) that the officer is adequately trained to administer such test and render an opinion; and 2) that the test was properly administered. *See Hill*, 865 S.W.2d at 704; *Duffy*, 966 S.W.2d at 378–79. Trial courts have broad discretion in determining whether to admit or exclude testimony. *See State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). Accordingly, the determination of whether a sufficient foundation was laid for Officer McConaha to testify as to Mr. Rose's performance on the HGN test was within the sound discretion of the trial court. *See Estate of West v. Moffatt*, 32 S.W.3d 648, 653 (Mo.App. W.D.2000).

■ First, "adequate training consists of a minimum of eight hours of police training on how to administer and interpret the HGN test." *Hill*, 865 S.W.2d at 704. Secondly, the test must be properly

administered.[6] *See id.* As set out in *Hill,* Proper administration of the HGN test requires (1) that the test be conducted by requiring a suspect to follow an object such as a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision, and (2) that the indicators be interpreted and scored, one eye at a time, as follows: (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystagmus occurs.

*Id.* at 704. Although Mr. Rose does not specifically challenge in the argument portion of his brief Officer McConaha's qualifications or the manner in which Officer McConaha administered the HGN test, the officer testified that he had received approximately twenty hours of training on the HGN test, and the transcript reveals that the test was properly administered. Thus, a sufficient foundation was laid for the admission of Officer McConaha's testimony concerning the results of the HGN test. Any criticisms that Mr. Rose might have about the HGN test in general or as it applied to him should have been borne out through the various options available to him at trial, such as cross-examination. *See State v. Ferguson,* 20 S.W.3d 485, 495 (Mo. banc 2000) (Defendant's "remedy is not to exclude the evidence, but to cross-examine the state's experts and to call expert witnesses of his own" concerning DNA evidence).

## B. Testimony Attributing a BAC Level Based Upon HGN Test Results

We now narrow our focus to Officer McConaha's statement "Six scores, in my experience, they've always been above the legal limit [of] .10. I've never had one that scored six below." In *Hill,* as here, the officer stated that his experience showed that persons who performed as appellant on the HGN test registered above .10% on a breathalyzer machine. *See Hill,* 865 S.W.2d at 705. In *Hill,* we reviewed the challenged statement for plain error because there was no objection to the testimony at trial and because it was not raised in the appellant's motion for a new trial. *See id.* Here, however, Officer McConaha's particular testimony was met with an objection, *see State v. Graves,* 588 S.W.2d 495, 499 (Mo. banc 1979), and the issue was raised again in Mr. Rose's motion for a new trial, *see* Rule 29.11(d). Thus, the issue of admissibility is preserved for appellate review. Because the trial court is vested with broad discretion to admit and exclude evidence at trial, we will affirm the trial court's decision absent a clear abuse of discretion. *See State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999). An abuse of discretion will be found only in "a ruling clearly against the logic of the circumstances, so arbitrary and

**6.** Where the administering officer "failed to substantially comply with proper testing procedures," most jurisdictions would "treat this issue as affecting the weight of HGN evidence rather than its admissibility." *Ballard v. State,* 955 P.2d 931, 941 (Alaska App.1998). In Missouri, however, proper administration of the HGN test is a foundational requirement under *Hill. See Duffy,* 966 S.W.2d at 379.

unreasonable as to shock the sense of justice, and lacking careful consideration." *Rasse v. City of Marshall*, 18 S.W.3d 486, 489 (Mo.App. W.D.2000).

■ Although admissible as circumstantial evidence of intoxication upon an adequate foundation, HGN test results are inadmissible to establish that a driver's blood alcohol content was of a specific degree. *See Hill*, 865 S.W.2d at 705.[7] Further, *Hill* suggests that HGN test results are inadmissible to estimate that a particular driver's blood alcohol content exceeded a certain level. *See id.*[8] Thus, evidence arising from HGN tests is to be regarded as merely circumstantial evidence of intoxication.

■ Although Officer McConaha did not specifically state an opinion that *Mr. Rose's* BAC would have registered at or above .10%, his testimony created a remarkable inference that such was the case, and we find that the admission of such testimony was an abuse of discretion. A BAC of .10% is not a prerequisite to convicting for DWI. *See* § 577.010.1. In fact, a jury is still free to conclude that a driver is intoxicated even if the driver's BAC is shown to be less than .10%. *See State v. Buckler*, 988 S.W.2d 565, 566–68

7. *Accord State v. Taylor*, 694 A.2d 907, 912 (Me.1997) ("using HGN results to precisely quantify blood alcohol content is improper"); *City of Fargo v. McLaughlin*, 512 N.W.2d 700, 708 (N.D.1994) ("the officer may not attempt to *quantify* a specific BAC based upon the HGN test"); *Emerson v. State*, 880 S.W.2d 759, 769 (Tex.Crim.App.1994) ("A witness may not use the HGN evidence to quantify the defendant's BAC"); *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766, 769 (1993) ("HGN tests shall not constitute evidence to establish a specific degree of blood alcohol content") (citation omitted); *People v. Buening*, 229 Ill. App.3d 538, 170 Ill.Dec. 542, 592 N.E.2d 1222, 1227–28, *appeal denied*, 146 Ill.2d 634, 176 Ill.Dec. 806, 602 N.E.2d 460 (1992) ("[W]e are not saying such evidence may be used to quantify it, in other words, utilized to establish a defendant's BAC in the absence of a chemical analysis of the defendant's blood, breath, or urine. We therefore hold HGN test results are admissible, as is any other evidence of a defendant's behavior, to prove that the defendant is under the influence of alcohol, provided a proper foundation has been laid."); *State v. Garrett*, 119 Idaho 878, 811 P.2d 488, 491 (1991) ("HGN test results may not be used at trial to establish the defendant's blood alcohol level in the absence of the chemical analysis of the defendant's blood, breath, or urine."); *State v. Bresson*, 51 Ohio St.3d 123, 554 N.E.2d 1330, 1336 (1990) ("an officer may not testify as to what he or she believes a driver's actual or specific BAC level would be, based solely on the HGN test results"); *see also Whitson v. State*, 314 Ark. 458, 863 S.W.2d 794, 797–98 (1993) ("testimony of the driver's nystagmus is rele-vant for the limited purpose of generally indicating the presence of alcohol" and "the HGN test was not used to fix a percentage of blood alcohol content"); *Yell v. State*, 856 P.2d 996, 997 (Okla.Crim.App.1993) (finding error in the officer's testimony because a statutory provision provided that "evidence other than that derived from chemical tests may not be used to quantify alcohol levels").

8. *Accord Wilson v. State*, 124 Md.App. 543, 723 A.2d 494, 498 (1999) (officer's testimony "I believe that . . . [appellant's] blood alcohol content was probably point one zero or higher," was inadmissible); *Ballard*, 955 P.2d at 942 (the witness may not "correlate the HGN test result with any particular blood-alcohol level, range of blood-alcohol levels, or level of impairment"); *State v. Ruthardt*, 680 A.2d 349, 361 (Del.Super.Ct.1996) ("testimony on HGN test results is not admissible as conclusive proof that a driver's blood alcohol content exceeded 0.10"); *State v. O'Key*, 321 Or. 285, 899 P.2d 663, 681 (1995) (en banc) ("HGN test evidence is *not* admissible to prove that a defendant was driving while having a BAC of .08 percent or more"); *State ex rel. Hamilton v. City Court*, 165 Ariz. 514, 799 P.2d 855, 857–58 (1990) (en banc) (HGN test results are "inadmissible to estimate BAC in any manner, including estimates of BAC over .10%, in the absence of a chemical analysis of blood, breath, or urine."); *State v. Barker*, 179 W.Va. 194, 366 S.E.2d 642, 646 (1988) ("Estimates of blood alcohol content based on the HGN test are inadmissible.").

(Mo.App. W.D.1999) (affirming DWI conviction where breathalyzer test measured driver's BAC at .094%). "Intoxication is a physical condition usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *State v. Blumer,* 546 S.W.2d 790, 792 (Mo.App.1977). Inasmuch as *Hill,* through the use of "linguistic gymnastics" (as characterized by the appellant), suggests that an officer who testifies that, in the officer's experience, persons who score six points on the HGN test also register above .10% on the breathalyzer is not the same as testifying that the individual defendant has a particular blood alcohol content and is properly admissible, we think otherwise and hold that it is an abuse of discretion for a trial court to admit such testimony absent an adequate foundation which establishes the witness' ability to determine that a person's performance on the HGN test represents a BAC in excess of a certain level. Central to our holding that the testimony in this case is inadmissible—indeed unacceptable—is defense counsel's objection to the testimony as well as counsel's preservation of the issue for appellate review, which distinguishes this case from *Hill.*

While the General Assembly provided in § 577.037.3 that competent evidence bearing on the question of whether a person was intoxicated may be introduced at trial, Chapter 577 implicitly limits the methods of quantifying alcohol levels. Section 577.020 provides that any person who operates a motor vehicle on Missouri highways shall be deemed to have consented to chemical testing of the person's breath, blood, saliva, or urine to determine the blood alcohol content if the person has been arrested upon reasonable belief that the person was driving while intoxicated. *See* § 577.020.1. Subsections 3 and 4 of § 577.020 set forth the standards for tests administered under this section:

3. Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid pursuant to the provisions of sections 577.020 to 577.041 shall be performed according to methods approved by the state department of health by licensed medical personnel or by a person possessing a valid permit issued by the state department of health for this purpose.

4. The state department of health shall approve satisfactory techniques, devices, equipment, or methods to be considered valid pursuant to the provisions of sections 577.020 to 577.041 and shall establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health.

§ 577.020.3–4; *see* § 577.026. "The requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the amount of alcohol in an individual's system. The testing process is a procedural requirement to insure accurate results." *State v. Mack,* 903 S.W.2d 623, 630 (Mo.App. W.D.1995) (citations omitted).

■ Although the legislature determined that a video recording made during the administration of a field sobriety test shall be admissible, *see* § 577.020.7, the HGN test is merely one of several field sobriety tests that may be utilized to assist a police officer in determining whether probable cause exists to arrest a driver based upon a suspicion of intoxication, and those test results, like other field sobriety test results, are admissible as circumstantial evidence of intoxication. However, because field sobriety tests are not subject to regulations promulgated by the Depart-

ment of Health, the HGN test does not enjoy the same standing as chemical testing of a driver's breath, blood, saliva, or urine. Thus, the State could not introduce evidence of Mr. Rose's BAC without first laying an adequate foundation for such testimony, and, simply put, Officer McConaha was not qualified or competent to equate a specific HGN score with a BAC level. Although the officer was adequately trained and properly administered the HGN test, and, to that extent, was properly received as an expert, the record does not establish that the officer's expertise in administering the HGN test included an ability to correlate the HGN test results to a person's BAC. Quite frankly, we are not satisfied that Officer McConaha's "[m]aybe 20" hours of training in the HGN test is sufficient to do so. As such, there was no foundation laid that would allow the officer to suggest that Mr. Rose's BAC exceeded .10%. The trial court erred, therefore, in allowing Officer McConaha to testify regarding Mr. Rose's alcohol concentration.

Trial courts, attorneys, witnesses and other relevant parties in our justice system, are now on notice that, unless a foundation is laid that establishes the witness's ability to correlate an HGN score with a BAC level, such testimony is unacceptable and shall be inadmissible. For us to condone such a practice would be akin to opening Pandora's box and, consequently, would alleviate, if not eliminate, any need for law enforcement officers to administer a chemical analysis of a driver's blood, breath, urine, or saliva.

## C. Prejudice

■ That Officer McConaha's particular testimony was inadmissible does not end our inquiry. An abuse of discretion in admitting challenged evidence warrants a new trial only if the admission prejudiced the defendant, which is to say

that "there is a reasonable probability that in the absence of such evidence the verdict would have been different." *State v. Hanway,* 973 S.W.2d 892, 896–97 (Mo.App. W.D.1998) (referencing *State v. Bell,* 950 S.W.2d 482, 484–486 (Mo. banc 1997)). Our Supreme Court of Missouri has explained:

[T]he test is whether the prejudicial improper admission was outcome-determinative. There is a distinction between evidence-specific and outcome-determinative prejudice. When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. A finding of outcome-determinative prejudice "expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."

*State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000) (discussing *State v. Roberts,* 948 S.W.2d 577 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)) (citations omitted). The defendant bears the burden of showing a reasonable probability that the verdict would have been different in the absence of such evidence. *See State v. Danikas,* 11 S.W.3d 782, 792 (Mo.App. W.D.1999). Mr. Rose claims that the officer's particular testimony was erroneously admitted, ostensibly assuming that the prejudicial nature of the improperly admitted evidence would be readily apparent.

■ Admission of improper evidence is harmless if the other evidence of guilt is overwhelming, or if the improper evidence is not highlighted and cumulative of other evidence. *See Hanway*, 973 S.W.2d at 897. Here, the State did make some statements about the inadmissible evidence. The prosecutor told the jury during opening statements,

Officer McConaha will testify to you that, based on his experience and training as a police officer with the gaze nystagmus test, that that means he's under the influence of alcohol, beyond a presumed level of intoxication, and that he's not capable of safely operating a motor vehicle. Based on that alone.

(Emphasis added). In addition, the prosecutor told the jury in the first half of closing arguments,

And the highest score is six, and that's what he did. He scored six. He scored the most you can do. And the officer testified when that happens, and [*sic*] his opinion and experience, the person is under the influence of alcohol. They're beyond the legal presumption of—of intoxication.

We agree with the dissent that this amounts to "highlighting" the inadmissible evidence, but, although these excerpts may be construed as improperly attributing undue significance to the HGN test, the prosecutor simply referenced the HGN test as one piece of the overall puzzle and relied just as heavily upon the other evidence of intoxication. The prosecutor did not rely solely on Mr. Rose's performance on the HGN test as evidence of intoxication.[9] Furthermore, Officer McConaha did not identify the HGN test as being more reliable an indicator of intoxication than any other field sobriety test.[10] In fact, his

testimony on cross-examination seemed to contradict the prosecutor's opening statement when he stated, "[Y]ou have to evaluate them all together. You can't just use one."

Moreover, comments made by the prosecutor in opening statements and closing arguments are not evidence. *See State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999). MAI–CR3d 302.02 instructs, "The opening statements of attorneys are not evidence." Instruction No. 2 in this case was read to the jury and was based upon MAI–CR3d 302.02. Similarly, MAI–CR 3d 302.06 instructs that closing arguments are not evidence, and that members of the jury are to be guided by the evidence and the law as given to them by the court. Instruction No. 10 in this case was based upon MAI–CR 3d 302.06, and the jury was also orally instructed in the same manner in response to an objection by defense counsel during closing arguments. Because "a jury is presumed to know and follow the instructions," *Madison*, 997 S.W.2d at 21, we cannot say that the inadmissible statement combined with the prosecutor's reference to the same in opening statements and closing arguments "so influenced the jury that ... there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *Barriner*, 34 S.W.3d at 150.

Overall, neither Officer McConaha nor the prosecutor dwelled upon the HGN test as an indicator of BAC while the officer was a witness. Further, we respectfully disagree with the dissent's view that Officer McConaha's statement influenced the jury with the aura of scientific evidence because the officer's prediction as to Mr. Rose's BAC was not touted as scientific

---

**9.** *See, e.g., Wilson*, 723 A.2d at 501.

**10.** *See, e.g., State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990).

evidence; rather, there was no suggestion that Officer McConaha was anything but a law enforcement officer rendering a lay opinion regarding his experiences in the field. Even so, the inadmissible statement was not cumulative of other evidence that, in effect, attempted to quantify Mr. Rose's BAC as exceeding .10%. Therefore, for the admission of Officer McConaha's testimony to be considered harmless, the other evidence of guilt must be overwhelming. *See Hanway,* 973 S.W.2d at 897.

The evidence of Mr. Rose's guilt is discussed in greater detail in Section III, *infra,* but the following summary illustrates the overwhelming nature of the evidence against Mr. Rose. Officer McConaha testified that Mr. Rose executed a left turn through an intersection, oblivious to the fact that the light was red. The officer testified that he smelled alcohol on Mr. Rose after pulling him over and noticed that Mr. Rose had glassy eyes. Officer McConaha further testified that Mr. Rose failed all three field sobriety tests (the HGN test, the one-leg stand test, and the walk-and-turn test). After the officer informed Mr. Rose of his failure on all three, Mr. Rose admitted, despite his previous denial of alcohol consumption, "Well, I had two beers." Significantly, the jury could also consider Mr. Rose's refusal to submit to a breathalyzer exam as evidence supporting his guilt. *See* § 577.041.1; *State v. Knifong,* 53 S.W.3d 188, 194 (Mo.App. W.D.2001). Considering the other evidence of Mr. Rose's guilt, which has been only summarized here and is discussed in

greater detail *infra,* we are confident that there is virtually no danger that the jury would have reached a different conclusion but for the contested evidence.[11]

Although the dissent charges us with weighing the imperfections of trial against our own view of Mr. Rose's guilt or innocence, we simply cannot say that Officer McConaha's isolated statement, when considered with the other evidence of guilt, so infected the jury as to dictate a guilty verdict based on the officer's statement alone. In *State v. Hanway,* 973 S.W.2d 892 (Mo.App. W.D.1998), we arrived at a similar result. There, the trial court erred in allowing an officer to testify regarding a portable breath test, which is, *by statute,* inadmissible as evidence of intoxication. *See id.* at 896. The defendant, among other things, failed every other field sobriety test, smelled of alcohol, had bloodshot and watery eyes, and had difficulty walking and balancing. *See id.* at 897. Although *Hanway* arguably involved more evidence of intoxication than the case before us, it is not necessary for us to engage in theoretical speculation and hypothesize where the imaginary dividing line is between "other evidence of intoxication" that is considered overwhelming and that which is not. It is sufficient for us to declare that the other evidence of Mr. Rose's intoxication was overwhelming in this case simply because we cannot say that the improper admission of Officer McConaha's particular testimony was outcome-determinative.

11. *See Garrett,* 811 P.2d at 490–92 (finding error in admitting testimony that the HGN test result was proof that the defendant's BAC was above the prescribed limit, but not finding reversible error in light of the other evidence of intoxication). The dissent notes that Maryland Court of Special Appeals held in *Wilson v. State,* 124 Md.App. 543, 723 A.2d 494 (1999) that the improper admission of testimony relating HGN results to a BAC of at least 0.10% was reversible error. However, without overstating the significance under Missouri law of a jury's ability to consider a defendant's refusal to submit to a chemical analysis, evidence of such refusal is admissible under Maryland law "only where material and relevant to a matter *other than guilt or innocence." Krauss v. State,* 322 Md. 376, 587 A.2d 1102, 1106 (1991) (emphasis added).

### D. Conclusion Regarding HGN Testimony

In conclusion, Officer McConaha's testimony, which effectively connected Mr. Rose's performance on the HGN test to a BAC in excess of .10%, was inadmissible, and the trial court abused its discretion in admitting such testimony. Although an adequately trained officer may testify that the results of a properly administered HGN test indicated a likelihood of intoxication, HGN evidence is not properly admissible under *Hill* to correlate a defendant's performance to a precise BAC or to a minimum BAC. Such testimony is unacceptable in the face of an objection and should not be admitted. However, just as we were unable to find a manifest injustice in *Hill*, we are unable find that the jury would not have convicted Mr. Rose of DWI but for the erroneously admitted testimony. Therefore, Point III is granted in part and denied in part, and a reversal of the trial court's judgment and sentence following the jury's conviction is unnecessary because Mr. Rose has not demonstrated that he would have been acquitted but for the improperly admitted evidence.

### III. Sufficiency of the Evidence

■ In his first point on appeal, Mr. Rose argues that the trial court erred in denying his motion for a judgment of acquittal. In reviewing a motion of acquittal that has been denied, we are limited to determining whether the evidence was sufficient to make a submissible case and whether there is sufficient evidence from which a reasonable jury could have found Mr. Rose guilty beyond a reasonable doubt. *See State v. Young,* 42 S.W.3d 729, 732 (Mo.App. W.D.2001). In arriving at our decision, we view the evidence and all reasonable inferences in the light most favorable to the verdict, while disregarding all contrary evidence. *See Buckler,* 988

S.W.2d at 567. We will refrain from weighing the evidence or determining issues of witness credibility, which is a function of the jury, "and it is within the jury's province to believe all, some or none of a witness' testimony." *State v. Brown,* 996 S.W.2d 719, 728 (Mo.App. W.D.1999).

■ "Driving while intoxicated" is defined in § 577.010 as follows: "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle in an intoxicated or drugged condition." An "intoxicated condition" is further defined by § 577.001.2 as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." An actual, numerical measure of blood alcohol content is not essential to the State's case. Although a *prima facie* case of intoxication is established, pursuant to § 577.037, when a chemical analysis reveals a driver's blood alcohol concentration to be ten-hundredths of one percent (.10%) or more, "the presence of ten-hundredths of one percent by weight of alcohol in a defendant's blood is not an essential element of the offense of driving while intoxicated." *Clarkston,* 963 S.W.2d at 711 (quoting *Blumer,* 546 S.W.2d at 792). Instead, where there is no chemical analysis of the driver's BAC, the State may meet its burden of proof solely through the testimony of a witness that had a reasonable opportunity to observe the alleged offender. *See Knifong,* 53 S.W.3d at 193; *see also* § 577.037.3 (providing that chemical analysis of a driver's blood, breath, saliva, or urine is not the exclusive means of proving intoxication).

■ Here, there is no evidence of Mr. Rose's actual blood alcohol level at the time he was stopped by Officer McConaha. However, there was substantial evidence before the jury from which it could determine that Mr. Rose was driving in an intoxicated condition on the morning of October 4, 2000. The jury heard testimo-

ny from Officer McConaha that "when the truck was about half way through the intersection, . . . the [left turn] arrow turned green. But it didn't seem to phase him; he was going on his way." After pulling the vehicle over, the officer noticed that Mr. Rose had a strong smell of alcohol and had glassy eyes. The jury also heard testimony from Officer McConaha regarding Mr. Rose's apparent difficulties in performing field sobriety tests. The officer testified that Mr. Rose failed all three that were administered. While taking the one-leg stand test, Mr. Rose swayed, used his arms to balance, and put his foot down three or more times. In the walk-and-turn test, Mr. Rose did not touch heel to toe, did an improper turn, used his arms to balance, stopped walking in order to balance himself, and took seven steps instead of nine when returning. Finally, as discussed *supra*, Mr. Rose also scored six points on the HGN, which is substantial evidence that he was intoxicated. *See Duffy*, 966 S.W.2d at 378; *see also Parrish*, 11 S.W.3d at 655 (a "score of six points is clearly indicative of intoxication.").

The officer also testified that he informed Mr. Rose that he failed the field sobriety tests and asked, "Are you sure you're not drinking?" Officer McConaha testified that Mr. Rose responded, "Well, I had two beers." Pursuant to § 577.041.1, the jury could also consider Mr. Rose's apparent refusal to submit to a breathalyzer exam as evidence supporting his guilt. *See Knifong*, 53 S.W.3d at 194. Not only did Mr. Rose refuse, he was given three opportunities to provide a breath sample, but he instead chose to puff his cheeks out and pretend to blow into the device. Officer McConaha testified that "it was clear that he did not want to give a valid sample." Finally, Officer McConaha testified as to his opinion, based on his experience as a law enforcement officer, that Mr.

Rose was under the influence of alcohol that night.

Viewing the evidence in the light most favorable to the verdict, we find that there was sufficient evidence adduced to make a submissible case and that there was sufficient evidence from which a reasonable jury could have found Mr. Rose guilty beyond a reasonable doubt. Accordingly, Point I is denied.

## IV. Interruption of Defense Counsel's Cross–Examination

■ Mr. Rose claims in Point IV that the trial court's *sua sponte* interruption during defense counsel's cross-examination of Officer McConaha was improper and prejudiced his defense. Initially, we note that this claim of error was not raised in his motion for a new trial, and, therefore, any review to be had of this contention can only be for plain error. *See* Rule 29.11(d); Rule 30.20. "To be entitled to relief under a plain error standard of review, appellant must show that the trial court's error so substantially affected his rights that manifest injustice will occur if the error is left uncorrected." *Barriner*, 34 S.W.3d at 145.

Point IV is unreviewable, however. As with every other point raised on appeal, Mr. Rose fails to apprise this court of the applicable standard of review. *See* Rule 84.04(e). In addition, his point relied on does not comply with Rule 84.04(d). His point reads:

The trial court erred in pre-emptorily, and without an objection before it, cutting off and disallowing appellant counsel's effort to cross-examine Officer McConaha regarding his prior testimony concerning his stated opinion of the absolute scientific, i.e., quantifiable accuracy of the conclusion to be drawn from the HGN test results as to BAC levels. As such, cross-examination was proper

and no objection had been raised at that juncture by the prosecuting attorney. Such sua sponte interruption of the trial proceeding served no judicial purpose but only worked to prejudice appellant's due defense presentation and was reflective of a seeming animus developing in the trial judge against appellant's counsel apparently due to his previous specific objection to the Court's ruling denominating Officer McConaha as an "expert" and allowing him to offer scientific evidence. And despite his assurance to counsel that he would not so inject himself thusly, again, into the proceedings, this Court did exactly that, as described in Points V and VI (TR 111), with the consequence of improperly prejudicing the jury, further, against appellant's position.

Rule 84.04(d)(1) governs appellate court review of the decision of trial court and supplies the form for a proper point relied on. The rule provides, in pertinent part, that each point shall:

> (A) identify the trial court ruling or action the appellant challenges;
>
> (B) state concisely the legal reasons for the appellant's claim of reversible error; and
>
> (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.
>
> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Point IV is not substantially in the form set out in Rule 84.04(d)(1). Also, it is not at all clear to what "Points V and VI" refers because he only raises five points on appeal. If we attempted to interpret this point, we would be forced to act as an advocate for Mr. Rose, which, clearly, we cannot do. *See Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 123 (Mo.App. W.D. 2001).

■ Further, Mr. Rose's argument does not correspond with the issue raised in his point relied on. In the argument portion supporting Point IV, he raises a claim of judicial partiality unrelated to the facts of the present case, and which is unsupported by legal argument. Instead, this theory is based on conjecture. His brief reads, in pertinent part:

> It appears in this instant case that the trial judge may have gotten caught up in the moment of competitive trial work and, [*sic*] may have suffered a "flashback" to when he was a younger man as an assistant prosecutor trying cases against defense counsel and felt it was time to object or the conviction was "at risk."

We decline to inquire as to the trial court's integrity in light of Mr. Rose's failure to properly brief this issue, complete with its own Point Relied On, supporting argument, and citation to legal authority. It seems, based on the transcript and the comments made in Appellant's Brief, some friction exists on the part of defense counsel toward the trial judge in this case, although the reason is not entirely clear beyond the previously-quoted reference to their former adversarial relationship. Rule 32.07 provides a mechanism for a change of judge. The record does not reflect that a change of judge was requested. In the absence of such a request, we find counsel's attempt on appeal to criticize the trial judge distasteful, and we are loath to find plain error in the face of counsel's disrespect to the trial court, which necessitated the interruption in the first place and continues on appeal.

As it relates to the trial court's challenged action in this point, the jury was excused before counsel was admonished. Because there is no caselaw cited in his brief to support his notion that an interruption of cross-examination under these circumstances amounts to plain error, Mr. Rose has not adequately demonstrated a manifest injustice in the event that we had chosen to grant plain error review.

Point dismissed.

## V. Interruption of Defense Counsel's Closing Argument

Mr. Rose's fifth point is similar to his fourth point. During closing argument, defense counsel argued that the HGN test was "scientifically unverifiable." After an objection, the court excused the jury and discussed the issue with counsel for both sides. When the jury returned, the court instructed the jury that the courts of Missouri "have generally accepted the validity of the gaze nystagmus test."

His fifth point reads as follows:

That the trial court erred in pre-emptorily, and with apparent frustration directed at appellant's attorney, called [sic] the attorneys to the bench upon the prosecutor's speaking objection to appellant attorney's closing argument regarding the appropriateness of Office [sic] McConaha's purported scientific testimony, i.e., absolute objective accuracy, of his conclusion from the observed HGN indicators/score that appellant was "over .10% BAC," and "over the legal limit of intoxication," as his ability to assert such conclusion(s) were wholly lacking in legal foundation and invaded the province of the jury as fact finder. The effect of said ruling was prejudicially compounded as the Court ordered the jury out of the courtroom in the middle of appellant's closing argument, instead of simply ruling from

the bench on the objection before it, as described above, and thereafter unilaterally instructed the jury, not MAI–CR approved, and unnecessarily, thereby engendering prejudice and bias against appellant's case and wholly disrupting and undermining the continuity and intended persuasiveness of appellant counsel's closing argument on behalf of appellant, especially as same related to the appropriate conclusion(s) to be drawn from HGN testing and the weight to be given the arresting officer's testimony. Such interruption and instruction was unnecessary and a clear abuse of discretion which was clearly injurious to defendant's case and likely had a decisive effect on the jury's verdict.

The State submits that appellant's fifth point on appeal does not comply with Rule 84.04(d). We agree. The point is simply unintelligible and violates Rule 84.04(d)(1). Furthermore, his argument in support of this point does not include the applicable standard of review. Rule 84.04(e).

Point dismissed.

## CONCLUSION

The appellant's claim of error in Point I is denied, and Point III is granted in part and denied in part. Officer McConaha's testimony concerning Mr. Rose's performance on the HGN test was properly admissible, and, although the trial court abused its discretion in allowing the officer to testify, "Six scores, in my experience, they've always been above the legal limit [of] .10. I've never had one that scored six below," the admission of such testimony did not result in outcome-determinative prejudice because the other evidence of Mr. Rose's guilt was overwhelming. Also, there was sufficient evidence adduced to make a submissible case, and there was sufficient evidence from which a reason-

able jury could have found Mr. Rose guilty beyond a reasonable doubt. Finally, Points II, IV, and V are dismissed because the claims of error raised therein have not been properly preserved for appellate review.

The circuit court's judgment of the appellant's jury conviction for DWI, pursuant to § 577.010, is affirmed.

HAROLD L. LOWENSTEIN, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.

PAUL M. SPINDEN, Presiding Judge, writes in a separate concurring opinion. Judge ROBERT G. ULRICH, concurs.

JAMES M. SMART, Judge, concurs with Presiding Judge SPINDEN's concurring opinion and in the result of Judge NEWTON's majority opinion.

WILLIAM E. TURNAGE, Senior Judge, concurs with Judge NEWTON's majority and Presiding Judge SPINDEN's concurring opinion.

RONALD R. HOLLIGER, Judge, writes for the dissent. Judges PATRICIA A. BRECKENRIDGE, JOSEPH M. ELLIS, and VICTOR C. HOWARD concur.

PAUL M. SPINDEN, Presiding Judge, concurring.

Officer Gerard McConaha's testimony that a score of six on the horizontal gaze nystagmus test always, in his experience, indicated that the person taking the test had a blood alcohol concentration of .10 percent apparently was a volunteered, nonresponsive opinion to which Douglas Rose did not object. As such, the testimony was properly admitted into evidence and became only an issue of weight for the trier of fact. *Washington v. Barnes Hospital*, 897 S.W.2d 611, 616 (Mo. banc 1995).

McConaha gave his opinion in response to the prosecutor's question: "Officer, based on your experience and training, what does a score of six indicate to you?" Rose did object to the prosecutor's question. He announced that he was objecting that McConaha was "incompetent to make such a conclusion." The circuit court properly overruled the objection.

This court declared in *State v. Hill*, 865 S.W.2d 702, 704 (Mo.App.1993), "that the HGN test has achieved general acceptance within the behavioral science community. We find that when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication." That conclusion was reaffirmed in *State v. Myers*, 940 S.W.2d 64 (Mo.App. 1997).

Hence, the circuit court was correct in permitting the question to McConaha, asking him to explain the HGN test results. Had McConaha only told the jury that Rose's score was six—the observation of fact that Rose sought to restrict McConaha's testimony to—the jury would not have been able to attach any significance or meaning to the testimony. The prosecutor was asking McConaha to explain the significance of a score of six.

Previously, the circuit court had sustained Rose's objection that the prosecutor had failed to show that McConaha had sufficient training and experience with the test to be able to explain what the test was and what its results indicated. The prosecutor cured this by inquiring extensively into McConaha's experience and training with the test. At the end, the circuit court properly declared that the prosecutor had established sufficient foundation for seeking McConaha's explanation of the test results.

Rose continued to object that the prosecution had not laid sufficient foundation for eliciting *any* opinion of any kind from

McConaha concerning the test. The circuit court properly overruled these objections. As we said in *Hill*, "[W]hen properly administered by adequately trained personnel, the HGN test is admissible as evidence[.]" *Hill*, 865 S.W.2d at 704. The prosecutor established that McConaha was properly trained to administer the test. Logic dictates that he be able to explain what the test results were and what they meant.

The prosecutor obviously was expecting McConaha to testify that a score of six indicated that Rose was intoxicated. That is indicated by the prosecutor asking, in halting fashion after McConaha had given his opinion that a score of six indicated that Rose's blood alcohol concentration was .10 percent, "And that—that—you're basically telling the jury that they're intoxicated?" McConaha answered, "Yes."

Had McConaha simply said that at the outset—that a score of six indicated that Rose was intoxicated—his testimony would have been quite acceptable. He didn't. He offered an opinion that a score of six always indicated a blood alcohol concentration of .10 percent—a correlation that the state had established no foundation in science for making. As we said in *Hill*, Missouri has recognized the HGN test as an indicator of intoxication, not a predictor of a specific blood alcohol concentration.

The problem for Rose is that after McConaha uttered his offending opinion, Rose sat silent, making no objection. He had objected strenuously, without justification, to McConaha's giving *any* opinion, but when McConaha gave what was clearly an improper opinion, he sat silent.

The dissenter would excuse his silence and would craft an objection for him—a lack of scientific basis foundationally for McConaha to testify as to the *specific* meaning of the HGN test results. That was not Rose's objection. He objected to McConaha's giving *any* opinion—that McConaha's giving *any* opinion lacked a scientific basis. As we have already established, this was incorrect. Where Rose erred was in not focusing on the specific and choosing to challenge any opinion of any kind.

When the key offending evidence came, Rose sat silent. His failure to object is crucial. The Supreme Court has made quite clear that "[i]f a question exists as to whether the proffered opinion testimony of an expert[1] is supported by a sufficient factual or scientific foundation, the question is one of admissibility. *It must be raised by a timely objection or motion to strike.*"[2] *Washington*, 897 S.W.2d at 616. What happens if no objection is raised or a motion to strike is made? The Supreme Court instructed:

> Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. *See Goodman v. Allen Cab Company*, 360 Mo. 1094, 232 S.W.2d 535, 539 (1950). The natural probative effect of this testimony is a consideration for the jury. *DeMoulin v. Roetheli*, 354 Mo. 425, 189 S.W.2d 562, 565 (1945).

*Id.* Hence, because Rose did not object, McConaha's opinion was an issue of what weight the jury should give the testimony and not an issue of the opinion's admissibility.

---

**1.** The circuit court properly recognized McConaha as an expert to the extent that it was willing to permit McConaha to explain what the HGN test was and generally what its results meant.

**2.** I added the emphasis.

The Supreme Court reaffirmed, in *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 125 (Mo. banc 1995), the longstanding principle that only specific objections preserve issues for appellate review. The *Bynote* court said:

National urges that Bynote failed to show that she would require future surgery because neither of her health care provider witnesses testified that they founded their opinion on the assertedly talismanic "reasonable degree of medical certainty." Unfortunately, National did not offer a specific objection at trial that the phrase had not been used. The objections offered—that Dr. Lipede lacked the qualifications to discuss the costs of surgery and that Dr. Forbes lacked the qualifications necessary to discuss surgery at all—were not sufficient to challenge the degree of certainty of either of the witnesses' opinions about the need for surgery. By failing to offer a specific objection at trial, National deprived Bynote of the opportunity to ask the question in the form that National now demands on appeal. *See Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 210 (Mo. banc 1991). Moreover, National failed to question the providers' degree of certainty on cross-examination, the proper forum for raising the doubts it now brings up on appeal.

This case presents an identical situation. Rose's only objection at trial concerned qualifications. He did not offer a "talismanic" objection at trial.

To allow him to do so now, as the dissenter would do, would be inherently unfair trial practice. It would permit him, in effect, to "sandbag" the circuit court. By withholding his specific objection, he avoided the prosecutor's being able to cure the problem with a proper question or with the circuit court's proper instruction to the jury and, after getting an unfavorable outcome, used the issue to seek reversal on appeal. As the Supreme Court has explained, "Appellate courts have held an objection to a question should be so specific the trial court can recognize what rule of evidence is being invoked and why the rule would disallow a responsive answer." *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 446 (Mo. banc 1998).

As I noted in a similar situation in *State v. Butler*, 24 S.W.3d 21, 35 (Mo.App.2000) (Spinden, J., concurring), "Because of the lack of objection, we need not concern ourselves with whether the content of [an expert's opinion] testimony was proper in the absence of plain error. The circuit court did not err in admitting evidence offered without objection. Without error, we have no basis for plain error review." The majority, therefore, need not concern itself with whether McConaha's opinion was prejudicial because the evidence was not erroneously admitted. The dissenter, by the same token, need not anguish over the proper standard for whether prejudicial evidence is "outcome determinative" because the evidence was not erroneously admitted.

Finally, I note that the majority gratuitously reviews Rose's contention that the circuit court should have granted his motion *in limine* to exclude evidence of his refusal to take a breath test because refusal was not found in his administrative suspension hearing for plain error. I agree with the majority that Rose did not preserve this issue for review because rulings on motions *in limine* are interlocutory in nature and because he did not object when the state introduced evidence of his refusal. I disagree, however, with the majority's reviewing for manifest injustice or miscarriage of justice under plain error.

Rule 30.20 grants us authority to consider "plain errors affecting substantial rights . . . when [we find] that manifest injustice

or miscarriage of justice has resulted" from plain error. The rule presents a bit of a conundrum by granting us authority to review plain error only if we find manifest injustice or a miscarriage of justice. How are we to make a finding of manifest injustice or a miscarriage of justice without reviewing the case?

The Supreme Court suggested in *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995), that it intended for Rule 30.20 to mean that we should first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. Only then, the *Brown* court instructed, should we review the claim to determine whether manifest injustice or a miscarriage of justice actually occurred. If we find that the claim of plain error does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred, we should decline to exercise our discretion to review a claim of error under Rule 30.20. *Brown*, 902 S.W.2d at 284. "The rule makes it clear that not all prejudicial error—that is, reversible error—can be deemed plain error." *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App.2000). Plain error is evident, obvious and clear error. *State v. Bailey*, 839 S.W.2d 657, 661 (Mo. App.1992).

I do not discern from the face of this record evident, obvious and clear error. Indeed, as the majority recognizes, "Missouri courts hold, for collateral estoppel purposes, that no relationship exists between a determination of fact in a criminal case and a determination of fact made in an administrative proceeding[.]" *State v. Rotter*, 958 S.W.2d 59, 64 (Mo.App.1997). Hence, I would decline to review Rose's contention under Rule 30.20.

The evidence clearly was sufficient for a jury to find that Rose was driving while intoxicated. Hence, I concur with the majority in affirming the circuit court's judgment.

ROBERT G. ULRICH, Judge, JAMES M. SMART, Jr., Judge, and WILLIAM E. TURNAGE, Senior Judge, concur.

RONALD R. HOLLIGER, Judge, dissenting.

I concur fully with all portions of the majority opinion except for the determination that the error in admitting Officer McConaha's testimony concerning his personal equation of HGN scores and blood alcohol levels was not prejudicial error that requires reversal.

Although the majority correctly states the test from *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000) (whether the prejudice is "evidence specific or outcome determinative"), the majority incorrectly applies the test to the case at hand. *Barriner* did not extensively discuss the difference between these two types of prejudice but did cite to *State v. Roberts*, 948 S.W.2d 577 (Mo. banc 1997). Evidence specific prejudice is the "prejudice a trial court considers when it weighs the probative value of a piece of evidence against its potential for prejudice." *Id.* at 592. Outcome-determinative prejudice occurs "if the error more-likely-than-not prejudices the entire proceeding against the defendant." *Id.* In *Barriner*, the specific issue was the erroneous evidence of uncharged misconduct or other crimes evidence; nevertheless, this writer submits that a number of factors that the court discussed are helpful in applying the evidence specific or outcome determinative prejudice test to this case. The factors included (1) the amount of evidence that was erroneously admitted and the extent to which the evi-

dence was referred to in the trial, (2) whether the erroneously admitted evidence was highlighted during the trial, (3) whether the prosecutor's introduction of the evidence was intentional and purposeful or inadvertent, and (4) does the improperly admitted evidence relate directly to the charged offense. *Id.* at 150–51. These factors are not necessarily exhaustive and may vary depending upon the particular type of evidence at issue.

The majority considers some of these factors but ignores the fact that the improperly admitted evidence was not collateral in any respect but goes directly to the heart of the charged offense. In an otherwise circumstantial evidence case, the jury improperly heard evidence of a scientific basis (blood alcohol level) to convict the defendant. In fact the strength and persuasiveness of apparent scientific evidence is one of the reasons that the courts of many other states have strictly prohibited testimony equating HGN scores with blood alcohol levels. *State v. Superior Court,* 149 Ariz. 269, 718 P.2d 171, 181 (1986).

The majority places strong emphasis on the fact that the officer did not testify that the HGN test was more reliable than the other field sobriety test.[1] But, in fact, the prosecutor told the jury in opening statement that the HGN test alone as interpreted by the officer was sufficient to convict. Thus, rather than this evidence being cumulative to other evidence, as the majority suggests, the prosecution's avowed theory was that all of the other evidence was cumulative to the HGN test and the officer's testimony that it indicated an alcohol blood level beyond the presumed limit. Although the majority is correct that opening statements and closing arguments are not evidence, a consid-

eration of whether the prosecutor has highlighted improper evidence cannot be made merely by looking at the evidence itself and ignoring the use that the prosecutor puts to such evidence. Here, it is obviously apparent that the prosecutor's theme and purpose was to admit the opinion testimony of the officer to show the jury an equivalent scientific basis for conviction (blood alcohol level) even though there was no breath or blood analysis.

The majority simply concludes that the other evidence of defendant's guilt is overwhelming. However, the Court in *Barriner,* upon which the majority purports to rely, *expressly rejected "so narrow a test." Id.* at 150. The evidence, here, is nothing more than the usual evidence of observations and field tests seen by police officers and trial judges every day. There was nothing unusual about any of that evidence: an improper turn, strong odor of intoxicants, glassy eyes, failure of field sobriety tests. It is difficult to see how in virtually any circumstantial evidence DWI case the admission of HGN based blood alcohol level evidence could ever be prejudicial under the majority's analysis. The majority has properly declared a class or type of evidence not competent but with no practical adverse consequences for its admission. The majority's conclusion would permit and encourage prosecutorial abuse.

Because a perfect trial exists only in theory, both justice and necessity permit considerations of discretion, harmlessness and prejudice in determining the admissibility of evidence and the legal consequences of improper admission. Nevertheless, a prejudice (or more precisely the lack thereof) standard should not, in application, become a method by which a re-

---

1. Although in fact it is. It is the only one of the field sobriety tests that has any scientific basis for indicating the influence of alcohol. It requires more specialized training than most of the other field sobriety tests.

viewing court weighs the imperfections of trial against its own views of guilt (or innocence). Rather, we must attempt the admittedly difficult task of considering how a jury would have been affected or not affected by the improper evidence for it is the jury determinative outcome that is essential. This writer has no confidence that a jury would have ignored and found overwhelming the other evidence of defendant's guilt without the improper opinion evidence relating the HGN test to a scientific test equivalent of blood alcohol. In fact it was so central to the prosecutor's strategy and the essence of the crime charged that it is virtually impossible to conceive of such evidence being ignored, unimportant, superfluous or not dramatically persuasive as to the issue of guilt.

The majority cites one case from another state, *State v. Garrett*, 119 Idaho 878, 811 P.2d 488 (1991), for the proposition that the admission of such testimony, although error, was not prejudicial. And although the court there enunciated a standard apparently similar to *Barriner*, there was no extended or considered discussion of any factors. Other states have clearly held, as our majority opinion now does, that opinion testimony equating HGN scores with levels of alcohol in the blood is inadmissible. At least one has also held that the improper admission was reversible error. *Wilson v. State*, 124 Md. App. 543, 723 A.2d 494, 501–02 (1999).

With respect to the concurring opinion I respectfully disagree with the author's conclusion that the error was not preserved by proper objection. The objective of the preservation requirement is, as the concurring opinion notes, to prevent sandbagging of the trial court. The objection made by defense counsel and cited by the concurring opinion also incorporated and referenced his earlier objection as to a lack of scientific basis foundationally for the officer to testify as to the specific meaning of the HGN test results. The trial court was of the opinion that under *Hill* the officer, if minimally qualified to administer the HGN, was qualified and scientific opinion testimony was admissible not only that a HGN score of six was an indicator of intoxication but also that there was a scientific correlation between that score and at least a minimum blood alcohol level. The concurring opinion ignores that distinction and mischaracterizes the majority's explanation of *Hill* and the limitations of its holding.

Although the majority has done a commendable job of analyzing why the evidence should not have been admitted, I respectfully disagree with its conclusion that the error does not require reversal.

PATRICIA A. BRECKENRIDGE, Judge, JOSEPH M. ELLIS, Judge, and VICTOR C. HOWARD, Judge, concur with Dissent.