**Rufus COOPER, Jr., Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A05–0107–CR–292.**

Court of Appeals of Indiana.

Feb. 4, 2002.

Brett B. Gibson, Lafayette, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Senior Judge.

A jury convicted Rufus Cooper, Jr. of operating a vehicle while intoxicated and operating a vehicle with at least .10 but less than .15 grams of alcohol, both misdemeanors. The jury was waived on a third count and the court found Cooper guilty of operating while intoxicated while having a prior conviction, a Class D felony.

In this appeal, Cooper challenges the evidence of three field sobriety tests given at the scene of his stop. He contends that no proper foundation was laid for admission of the tests and, therefore, they were not relevant and were highly prejudicial.

The evidence at trial revealed that about 9:30 p.m. on November 10, 2000, State Police Officer Scott Brown observed a vehicle in front of him make an abrupt stop in the road. The vehicle then continued on for another block or block and a half and made another abrupt stop. Without signaling, it then made a right turn into the parking lot of a Village Pantry.

Corporal Brown then activated his emergency lights and stopped the other vehicle in front of the store. He then went up to the driver, later identified as Cooper, and asked why Cooper had made the sudden stops and then turned without signaling. At this time Brown smelled the odor of alcohol on Cooper's breath and observed that Cooper's speech was slurred and his eyes were glassy. Cooper initially denied that he had anything to drink. Brown asked him to step out of the car and when he did so, Brown noticed that Cooper was swaying and leaned against his car. He again asked if Cooper had been drinking, and Cooper admitted that he had drunk a beer. Corporal Brown then asked if Cooper would be willing to submit to some field sobriety tests, and Cooper agreed.

Before testing, Corporal Brown asked if Cooper had any health problems in order to assess whether there might be some reason why Cooper could not perform the tests. Cooper said he had no problems. Brown then administered three field sobriety tests: the one leg stand, the walk and turn and the horizontal gaze nystagmus (hereinafter referred to as HGN). Prior to administering each test Corporal Brown

explained and demonstrated it. Cooper had no questions regarding the tests. He then failed all three.

At that point, Corporal Brown read Indiana's implied consent law to Cooper and Cooper agreed to submit to a chemical test. He was then transported to the station where a breath test was administered. The test results showed that Cooper had a blood alcohol level of 0.11 percent. He was then arrested and charged.

At trial, Corporal Brown testified that he had been an officer for five and a half years, and that he had received six months training at the Indiana State Police Academy and numerous hours of in-service training during each year he had been an officer. Part of his training included recognizing signs of intoxication and administering field sobriety tests, including what cues to look for when testing. He stated that he had been updated on these tests and had used them roughly two hundred times in the field. He described for the jury each test he had given to Cooper, what signs or cues he looked for and what was considered a failure for each test. He then testified to his observations of Cooper's performance of the tests. He stated that Cooper had failed each of the tests, and that failure showed "a sign" or "some signs" of intoxication. We note that the officer did *not* testify that based upon one or more of the tests it was his opinion that Cooper was intoxicated.[1] Cooper made a timely objection to evidence of each of the tests on the basis that no proper foundation had been laid to establish the tests

were relevant, reliable or had any scientific basis.

■ Last year in *Smith v. State*, 751 N.E.2d 280, 282 (Ind.Ct.App.2001), *aff'd on rehearing*, 755 N.E.2d 1150 (Ind.Ct.App. 2001), *trans. denied*, this court held that the investigating police officer's training and experience is the only evidentiary foundation required for the admission of evidence concerning the administration of standard field sobriety tests.[2] Here the evidence of the one leg stand and the walk and turn tests are controlled by *Smith*, and the officer's testimony concerning his training and experience in their use provided a proper foundation for admitting the evidence.

The *Smith* court, however, expressly noted that it did not decide what foundation was required for testimony regarding the horizontal gaze nystagmus (HGN) test since it had not been administered in Smith's case. Furthermore, our research discloses that Indiana has not directly ruled on the admissibility of HGN evidence in OWI cases.[3] Accordingly, since the premise upon which the validity of an HGN test rests differs from that relied upon by other standard field sobriety tests, we will address it separately.

"Nystagmus is an involuntary jerking of the eyeball. [The involuntariness differentiates it from other field sobriety tests.] The jerking may be aggravated by central nervous system depressants such as alcohol or barbiturates. [citation omitted]. Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as

---

1. The question of whether a trained officer might express such an opinion based upon the results of a series of field sobriety tests is not before us, and we express no opinion concerning the admissibility of such an opinion.

2. The tests employed in *Smith* were the one leg stand, walk along a straight line, count backwards and counting to four while touching his thumb to each finger.

3. The test was mentioned in *Weaver v. State*, 702 N.E.2d 750 (Ind.Ct.App.1998), but no objection was raised concerning its use.

they are turned to the side. In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent." *State v. Superior Court in and for Cochise Co.*, 149 Ariz. 269, 718 P.2d 171, 173, 60 A.L.R.4th 1103, 1110 (Ariz.1986).

Although we have not heretofore been called upon to consider the admissibility of HGN evidence, it is no newcomer to the scene in OWI field testing. Indeed, as long ago as 1977 the National Highway Traffic Safety Administration, U.S. Department of Transportation, concluded that HGN along with walk-and-turn and one-leg stand tests were the most effective roadside testing to detect impaired drivers. *Psychophysical Tests for DWI Arrest*, No. DOT–HS–802–424 (June 1977).[4]

In approving use of HGN in *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000), the Nebraska Supreme Court cited cases in seventeen other state court jurisdictions that have approved the use of HGN in drunk driving cases. Moreover, in *Superior Court*, appendices to the opinion cite 29 articles and papers dealing with the subject. (The interested reader may pursue these, but we find it unnecessary to do so here.)[5]

■ We agree with the courts in *Superior Court* and *Baue* that the results of a properly administered HGN test are admissible to show impairment which may be caused by alcohol and, when accompanied by other evidence, will be sufficient to establish probable cause to believe a person may be intoxicated. We, therefore, so hold.

■ Accordingly, we turn to the question of the proper foundation for the admission of HGN evidence. Accepting the position taken in *Superior Court*[6], the court in *People v. Buening*, 229 Ill.App.3d 538, 170 Ill.Dec. 542, 592 N.E.2d 1222, 1227 (1992) held that the proper foundation for admitting HGN evidence should consist of describing the officer's education and experience in administering the test and showing that the procedure was properly administered. That is in keeping with our decision in *Smith* and was also the foundation requirement adopted in *Baue*, 607 N.W.2d at 205, where the court stated this was the majority rule and characterized it as sound. Again, we agree and adopt this as the necessary foundation for admitting HGN evidence.

Since Corporal Brown testified to the necessary foundation evidence, we find

---

4. Taking issue with the implication such studies by organizations involved in highway safety or law enforcement are necessarily biased, the court in *Superior Court* observed, "Furthermore, it is not to the advantage of law enforcement in the highway safety field to have an unreliable field sobriety test. It is inefficient to arrest and transport a driver for chemical testing, only to find that he is not in violation of the law." 718 P.2d at 180.

5. See, also, APRI: *Horizontal Gaze Nystagmus, The Science and the Law*, DOT–HS–808–938 (July 1999), which, inter alia, surveys all fifty states and the District of Columbia.

6. 718 P.2d at 181.

that his testimony concerning the HGN test he had administered was properly admitted.

Affirmed.

KIRSCH, J., and ROBB, J., concur.