**Tyler R. HINDS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 87A04–0901–CR–12.

Court of Appeals of Indiana.

April 28, 2009.

Publication Ordered May 11, 2009.

Mark K. Phillips, Boonville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Tyler R. Hinds appeals his conviction for Operating a Vehicle While Intoxicated,[1] a class A misdemeanor, arguing that the trial court improperly admitted certain evidence and that there is insufficient evidence supporting the conviction. Finding no error, we affirm.

### FACTS

On September 6, 2006, Indiana State Trooper James Boling was patrolling in Warrick County when he observed a vehicle weaving in and out of three lanes of traffic. After following the vehicle for a short distance, Trooper Boling initiated a traffic stop. Hinds was the driver of the vehicle. When Trooper Boling approached Hinds, he immediately noticed a "strong odor of an alcoholic beverage." Tr. p. 3. He also observed "empty and open beer bottles and cans all throughout [Hinds's] vehicle on the floorboard." Id. at 3–4.

Trooper Boling proceeded to administer several field sobriety tests. He administered the horizontal gaze nystagmus (HGN) test and a walk-and-turn test, asked Hinds to stand on one leg and count to thirty, and asked Hinds to extend his arms, close his eyes, and touch his nose. Hinds failed all of these tests. Trooper Boling then transported Hinds to the Warrick County Jail, where Hinds provided a breath sample that revealed .16 grams of alcohol per 210 liters of breath.

On February 7, 2007, the State charged Hinds with class A misdemeanor operating a vehicle while intoxicated, class A misdemeanor operating a vehicle with a blood alcohol content of .15 or more, class C misdemeanor operating a vehicle while intoxicated, and a class C traffic infraction. At the conclusion of the August 7, 2008, bench trial, the trial court found Hinds guilty as charged, though it dismissed the class C misdemeanor charge as a lesser-included offense. On September 18, 2008, the trial court merged the second conviction into the first and sentenced Hinds to

---

1. Ind.Code § 9–30–5–2(b).

one year of incarceration, fully suspended to probation. Hinds now appeals.

## DISCUSSION AND DECISION

### I. Admissibility of Field Sobriety Tests

■ Hinds first argues that the trial court abused its discretion by admitting Trooper Boling's testimony regarding the field sobriety tests into evidence. The trial court is vested with the discretion to admit or exclude evidence, and we afford that decision a great deal of deference on appeal. *Small v. State,* 736 N.E.2d 742, 744 (Ind.2000). An abuse of discretion occurs only if, having examined solely the evidence supporting the ruling and any unrefuted evidence in the defendant's favor, we are convinced that the evidentiary ruling is clearly against the logic and effect of the facts and circumstances before the trial court. *Cox v. State,* 774 N.E.2d 1025, 1026 (Ind.Ct.App.2002).

Hinds argues that Trooper Boling administered some of the field sobriety tests improperly and that the other field sobriety tests were not officially sanctioned and should not be admissible. Initially, we observe that Hinds cites to no authority establishing the foundation that must be laid to render testimony regarding these tests admissible, nor does he explicitly argue that the State failed to lay a proper foundation.

■ Generally, the results of field sobriety tests are admissible after a proper foundation has been laid. *Cooper v. State,* 761 N.E.2d 900, 903 (Ind.Ct.App.2002) (concerning the HGN and walk-and-turn tests); *Smith v. State,* 751 N.E.2d 280, 282 (Ind.Ct.App.2001) (concerning field tests generally). To lay a proper foundation for the admission of such evidence, the State must establish that the administering officer was trained and experienced and that the tests were properly administered.

*Cooper,* 761 N.E.2d at 903; *Smith,* 751 N.E.2d at 282.

■ Here, Trooper Boling testified that during his eighteen-year career, he has been trained to identify and detect intoxicated people. Specifically, he has been trained "on detection of impairment [and] administering roadside field sobriety testing." Tr. p. 5. He has been trained to properly administer the walk-and-turn and HGN tests. *Id.* This evidence suffices to establish that Trooper Boling was trained and experienced to administer these tests.

Hinds argues, however, that the HGN and walk-and-turn tests were administered improperly. This court has explained the content of these tests:

The National Highway Traffic Safety Administration (NHTSA) has deemed the horizontal gaze nystagmus, walk-and-turn, and one-leg stand tests to be "the most effective roadside testing to detect impaired drivers." *O'Banion v. State,* 789 N.E.2d 516, 517 (Ind.Ct.App. 2003) (quoting *Cooper v. State,* 761 N.E.2d 900, 903 (Ind.Ct.App.2002)).

Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they are turned to the side. In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision, toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation, and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the

driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent. *Cooper,* 761 N.E.2d at 902–03. Next, the walk and turn test involves the officer demonstrating the following and instructing the driver to do the same. The driver must "walk 'with heel to toe' contact on each step, 'hands down to his sides,' for nine steps, then pivot on his left foot, and walk back nine steps." *O'Banion,* 789 N.E.2d at 517. Lastly, the one-leg stand involves the driver "raising one foot about six inches off the ground and counting off thirty seconds in that position." *Id.*

*Johnson v. State,* 879 N.E.2d 649, 651 n. 2 (Ind.Ct.App.2008).

As for the HGN test, Hinds finds the following faults with Trooper Boling's administration thereof: Trooper Boling only "eyeballed 45 degrees" and "never stated that he held the tip of the ink pen *above* the suspect's eyes, or that he checked for all three clues in *both* eyes, *twice,* starting with the *left* eye." Appellant's Br. p. 4 (emphases in original). This court has commented that "the thrust of [the HGN test] is for the tester to move an object in a certain fashion in front of the driver and watch the driver's eyeball to detect involuntary jerking." *O'Banion,* 789 N.E.2d at 519 (internal quotation omitted). Here, Trooper Boling accomplished that purpose and noticed that Hinds's eyes were jerking the whole time.

Hinds also complains that when Trooper Boling conducted the walk-and-turn test, he failed to inform Hinds that he was permitted to hold his arms six inches from his body as balance. Tr. p. 51. Instead, Trooper Boling told Hinds to "keep his hands to his side." *Id.* Hinds failed the balance component of the test. In fact, "[h]e failed every part of the test." *Id.* at 20. Specifically, Hinds "had no balance when he tried to walk. He would not

touch his heel to his toes, he kept missing that. His arms were raised. So that test was discontinued before he even got finished because he was stumbling so bad." *Id.* at 23. Thus, Trooper Boling's observation that Hinds raised his arms from his body—which he was permitted to do, up to six inches—was only one of many reasons that he concluded that Hinds failed the walk-and-turn test.

■ This court has observed that field sobriety tests "do not involve any complex scientific process or principles. The test results are reported as an officer's observations about a defendant's ability to perform simple tasks." *Smith,* 751 N.E.2d at 282. We agree with that observation and simply cannot conclude that the failure to precisely calculate a forty-five degree angle renders an HGN test unreliable and inadmissible or the failure to inform Hinds that he was permitted to hold his arms out six inches from his body for balance renders a walk-and-turn test inadmissible. At the most, these imprecisions go to the weight, rather than the admissibility, of Trooper Boling's testimony. And indeed, Hinds cross-examined Trooper Boling at length about these precise issues. It was for the factfinder to weigh the evidence and assess witness credibility, and we decline Hinds's invitation to second-guess the trial court's evaluation thereof.

Hinds also argues that the other tests administered by Trooper Boling—specifically, a finger-to-nose test and a backward count test—are neither standardized nor certified. Thus, Hinds argues that Trooper Boling's testimony regarding Hinds's failure to pass these tests should not have been admitted.

It is well established that relevant evidence—meaning evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it

would be without the evidence—is admissible. Ind. Evidence Rules 401, 402. Even a slight tendency to make a fact more or less probable will suffice. *Lycan v. State,* 671 N.E.2d 447, 453 (Ind.Ct.App.1996).

 As noted above, Trooper Boling has had an eighteen-year career as a police officer. He has been trained in the identification and detection of intoxicated people, and estimates that he has observed persons he believed to be intoxicated over 1,000 times throughout his career. As such, his observations are certainly relevant and admissible. That these tests are not standardized do not render them irrelevant. Hinds is certainly free to argue, as he did, that the lack of standardization renders these tests less reliable and more imprecise than the NHTSA-sanctioned tests. But again, this argument goes to the weight, rather than the admissibility, of this evidence. Thus, this argument must fail.

## II. Sufficiency of the Evidence

Finally, Hinds argues that there is insufficient evidence supporting his conviction. The evidence supporting a conviction "is sufficient if an inference may reasonably be drawn from it to support the verdict." *Drane v. State,* 867 N.E.2d 144, 147 (Ind.2007).

Here, the record reveals that Trooper Boling observed Hinds's vehicle swerving in between three lanes of traffic. After initiating a traffic stop, Trooper Boling immediately noticed a strong odor of alcohol and noticed numerous open beer bottles and cans inside the vehicle. Trooper Boling then administered at least four field sobriety tests, during which Hinds displayed impaired reflexes and unsteady balance. Hinds failed all of the tests and was unable to complete the walk-and-turn test. Upon being transported to jail, Hinds gave a breath sample that revealed .16 grams of alcohol per 210 liters of breath. We find this evidence sufficient to support Hinds's conviction.

The judgment of the trial court is affirmed.

MAY, J., and BARNES, J., concur.

## ORDER

On April 28, 2009, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee State of Indiana, by counsel, has filed a Verified Motion for Publication of Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down in this cause on April 28, 2009, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

BAKER, C.J., MAY and BARNES, JJ., concur.